Gillion v. Asuncion. I just want to make sure, counsel. Mr. Norton, can you hear us okay? Yes, your honors, I can. And is it Mr. Medeo? Am I saying that correctly? Yes, that's correct, your honors. All right, great. Well, look, you both have ten minutes of argument. I'll say this to all the parties, is that please keep track of your time. We've had this happen this week, that when the light is flashing red, that's not like the crosswalk where you kind of keep going. It does mean you're supposed to kind of stop. And we also had counsel, I think, do the right thing, where if we're not asking any questions and there's time on the clock, it's okay to sit down. Like I always say, there are no bonus points for using all your time here in the Ninth Circuit. And with that, Mr. Norton, I believe you're first. Go ahead. You're muted. You're still muted, sir. I can't hear you. I apologize. There you go. Thank you, your honors. So obviously we're here because we believe that ineffective assistance of counsel is the matter before this court. Trial counsel failed to investigate, let alone call a material witness, Leticia Adkins, who was an eyewitness to the shooting, and who in her police report told the officers that she had never seen the person who shot the victim. And she knew Mr. Gillian, the petitioner, and in her declaration, of course, which we submitted, which was authored in 2016, she said, it states unequivocally it was not Ronald Gillian who shot the victim. So we believe that because without her testimony, the only defense that was presented was Mr. Gillian's own testimony, which without a corroborating witness, which Ms. Adkins certainly is and was, then Mr. Gillian was left standing alone. And again, Ms. Adkins was on the prosecutor's witness list, but they didn't call her for obvious reasons, because she provided exculpatory evidence for Mr. Gillian. I want to ask you about just how exculpatory that evidence would be in the following respect. There was physical evidence to corroborate the victim's statement that he'd been shot with a 9mm because there were two casings found. But the victim had seven bullet holes in him, and so it's quite possible that there were two shooters. In other words, Ms. Adkins could have been telling the truth, and it still might not have been entirely exculpatory. So what is your response to that? Well, Your Honor, my response to that would be that there was no identification of any other gun that would tie that to Mr. Gillian whatsoever. Well, there was the physical evidence, the casings, that tied it to his identification of the firearm. So I'm not sure. If someone is shot seven times and your client is accused of shooting twice, I'm not sure that saying, I saw someone else shoot the victim gets him off the hook. Well, again, from the evidence, there was only one shooter identified. But that's my point. There may have been two shooters identified, one by the victim and one by Ms. Adkins. They could both be correct. Well, Your Honor, with all due respect, I don't believe that Mr. Gillian, there was never a gun found with his fingerprints on it that would match the casings of either of the caliber rounds that were found in the victim. So I think it seems to me there was one person who Ms. Adkins saw from a distance. Well, the victim was a couple of yards, six feet away from her. And she saw the individual who shot the victim in the back and said he was an individual, 25 to 30 years old, bald. And in her declaration she said, this victim, this shooter was not Ronald Gillian. And we're at a loss as to why defense counsel, as you see, we mailed them to the VA letters, why did you not call Letitia Adkins in our case? Well, she also had some credibility issues that would have been made known to a jury as well. And with all due respect, Your Honor, you're right. That's a jury's job is to determine the credibility of the witness. In this case, they never saw her. They never saw Letitia Adkins or heard her testimony. Had they, we believe it would have certainly raised reasonable doubt in the jury's mind whether or not, you know, that's debatable. We won't know because she was never called. Counsel, if it's debatable, our job is to determine whether the state court was reasonable in concluding that there was not prejudice. So if it's debatable, then don't we have to uphold what the state court concluded? Your Honor, again, with all due respect, I may have misspoke. I don't think it's debatable that, certainly it's a matter for the jury to determine credibility, but we believe the standard is, The standard is, would her testimony undermine the confidence in the outcome of the trial? That's the correct standard for the court to apply, as the court knows. And we believe that it certainly would have undermined the confidence in the outcome of the trial. Again, Ms. Adkins was an eyewitness six feet away from the victim, and she unequivocally testifies that this was not Ronald Gillian. And so we believe that it is very important, and it does raise the level of prejudice against, you know, Mr. Gillian's right to a Sixth Amendment claim. And if the court has any more questions, that's my part. Well, let me just clarify. I think the standard we're applying is, could any reasonable judge conclude that it would not undermine confidence in the verdict, correct? There's a double-deference standard we're applying here because it's AEDPA. Correct, Your Honor. Correct. So it's not merely would it undermine our confidence. We have to put ourselves in the shoes. Would any reasonable judge conclude that? So let me ask you about that. In light of that standard, which, look, you have a tough standard in this case. I mean, I think we all have to acknowledge the Supreme Court and AEDPA is a difficult standard. One of the things that the prosecution emphasized during the trial was that there was witness intimidation going on. And I'm sure opposing counsel is going to talk about it. I'm certainly going to ask about it. What's your response to that, saying that Atkins could be cast in this world of a campaign by people to undermine the government's case by threatening people, by making stuff up, and she would be part of that? So that actually, if you were to have her testify, it actually may have strengthened the prosecution's case because it would be another instance of showing that the fix was in. And, again, Your Honor, that's certainly within the realm of possibility. However, that would have been a job for the prosecutor due under cross-examination. Our position is that because she was not ever called to trial by trial counsel, and trial counsel knew her statement that she had given to police, immediately her first interview was that it was a different, she didn't say it was not Ronald Gillian, but she described an individual who did not fit the physical description whatsoever of Ronald Gillian. And so I believe a reasonable judge would believe that that testimony had been, you know, that evidence had been admitted into the trial, that it certainly would have, you know, made a difference in the outcome, we believe. Any other questions from my colleagues? I think you want to reserve the rest of your time. Yes, Your Honor, thank you. All right, very well, thank you. All right, Mr. Medeo. Yes, good morning, Your Honor. My name is David Medeo for Respondent. Initially, a petitioner cannot overcome the strong presumption that counsel made a reasonable strategic decision not to call Atkins as a witness. Can you slow down a little bit? I think we're getting a little bit of an echo. Of course. Maybe just slow down just a little bit. Let me turn down my speaker as well. All right, so first I just want to make the point that petitioner cannot overcome the strong presumption that counsel made a reasonable strategic decision not to call Atkins as a witness. As the district court here noted, the decision on whether to call a witness is a strategic one, and it depends on a lawyer's assessment of the credibility of that witness. And petitioner here fails to provide any statement from trial counsel or evidence in any effort by Habeas Counsel to actually contact him. So secondly, in any of this. Actually, counsel, let me just start there. What standard are we reviewing that prong of Strickland? Because as I read the state court order, the state court assumed that counsel was deficient and then moved to prejudice. Maybe I'm wrong, but if I'm right about that, then don't we just apply de novo to that part of it? You don't get the EDBA deference? That is correct, Your Honor. It is de novo on that prong of Strickland. Okay. Then that's a lot tougher for you because it's hard to see why you wouldn't at least interview the person or at least call the person. I don't want to dictate your argument, but I think you're better off arguing prejudice on the result as to the tactical decision here. I agree, Your Honor. It is a much stronger argument, and I will move to that. I just want to say that it is a petitioner's burden, actually. Did the government ever interview Ms. Atkins? She was on the witness list. A police officer did interview, and there is a police report with her statement on it. Beyond that, we don't know. Atkins' declaration states that she was interviewed by two individuals. She doesn't remember who they actually were, so she's not really helpful in that regard. Her statement to the police was contradictory to her declaration in at least one important respect. In fact, she told the police officer that there was no argument at all, that people were just talking, and then by the time of her declaration she said what everybody else had said, which was, oh, yeah, there was a big fight going on. That is correct, Your Honor. She was inconsistent on both of her statements, and she, of course, has very strong credibility issues, which is, again, a reasonable decision for counsel to make not to call her as a witness. But I'd like to move to the prejudice prong, if I may, because as the Court noted, that is the argument in which we get double deference. The State Court did find here that counsel reasonably or, I'm sorry, the State Court did find here that counsel's action resulted in no prejudice. Specifically, the district court noted that Atkins was a biased witness. She was a friend of Dick Vins, who encouraged Petitioner to actually confront the victim here. Atkins was clearly intoxicated on the night of the shooting, and counsel could have reasonably believed that Atkins' testimony would hurt rather than help Petitioner's case. There was, of course, strong evidence of Petitioner's guilt here. The victim identified Petitioner as a shooter five times, once during the 911 call, once when the police arrived, and three times in the hospital. He specifically found Petitioner's picture online and said, this is the person who actually shot me. Petitioner was aware, I'm sorry, the victim, Davis, was aware of Petitioner before this. He actually knew who he was. He very clearly and very strongly identified him as a shooter, and he picked him out. Counsel, he went back and forth with his identification, did he not? And also, aren't there real problems with the victim himself that night, eyeglasses missing, intoxicated, back turned toward the shooter? I mean, aren't there problems with his testimony? And didn't he recant several times his accusation against the Petitioner? Well, he did wear glasses, he said, but his glasses were actually found at the site of the shooting. So he was wearing his glasses when he was shot. And so the fact that he needed glasses to actually see wouldn't really count against his ability to actually see the shooter. And when he was shot, he was spun around a couple times. And so whether he was shot in the back first or shot in the front first, he clearly was facing the shooter at some point. So, again, that wouldn't really affect the question for the jury to decide on whether he was able to see, but there was clearly nothing in his testimony to indicate that he didn't have a good view of the shooter. And his testimony was actually consistent from the start up until trial when he basically said, I don't remember certain things, I didn't see certain things. Because, again, there was the witness intimidation factor that he clearly stated. He was afraid for his girlfriend's life, he was afraid for his life. And so the jury was able to evaluate that. But he was pretty clear from the very beginning that it was Petitioner who actually shot him. He identified him five times before this. And actually at trial he said that Petitioner was next to him two or three feet away. He was consistent in that regard. He said that he saw him with a gun two or three feet away. Now, he said at trial that he wasn't actually sure who shot him. That's the one thing that he didn't say that he didn't back up his statements earlier. But virtually everything else he said was entirely consistent from the beginning. So unless the Court has any other questions, for these reasons the District Court properly found that the State Court was not unreasonable in finding Petitioner failed to establish prejudice. As the Court noted, we have double deference here. And it's not close to that standard. It hasn't reached that level. And this Court should affirm the District Court's denial of relief. Okay, seeing nothing else from my colleagues here, thank you very much, Counsel. Thank you. You may proceed, Mr. Norton. Thank you, Your Honor. One of the things that we've asked this Court to explain in your decision, did I ask, why does Brown v. Myers not apply in this case? The Respondent did not contravene why Brown v. Myers does not apply in this case. We believe that Brown v. Myers is basically a mirror image of this case. And frankly, the witness intimidation aspect of this case is irrelevant to why trial counsel failed to call an exculpatory witness. With all due respect to Mr. Medeo, who I have a great deal of respect for, and I know he's doing his job, why did trial counsel fail to call an exculpatory witness? Counsel, if we go only on the question of prejudice, why would we have to answer the question of why? On the issue of prejudice, certainly Mr. Gillian, the Petitioner, is greatly prejudiced by this witness not being called. And we believe this, again, Brown v. Myers, we believe is the case that we would ask this Court to look at. But Counsel, Brown is pre-EDPA, correct? It is. It was the Nova Review of Prejudice. So that's tough. All right. Well, thank you, Your Honor. So with that, we respectfully request that this Court find prejudice and remand this case back to the Court. All right. Thank you. Thank you both for your argument. We appreciate you guys jumping back in. After we said you didn't have to show up, I appreciate you guys both showing up. Thank you, Your Honor. Have a nice day. Thank you. This matter is submitted. We'll go ahead and call the next one.
judges: GRABER, OWENS, Tunheim